SMITH (BAKER v.). See Case No. 781.

---

## Case No. 13,011.

### SMITH v. BANK OF COLUMBIA.

[4 Cranch, C. C. 143.] [1]

Circuit Court, District of Columbia. May Term, 1831.

EXECUTION—LIEN—DISCHARGE—RIGHT TO COUNTERMAND—ALIAS WRIT—BANKS—CHARTER—REPEAL.

1. A fieri facias issued by the order of the president of the Bank of Columbia, under the 14th section of its charter, bound the lands and goods of the debtor from the time of the delivery of the writ to the marshal, if it bound them at all.

[See Bank of Columbia v. Bunnell, Case No. 863.]

2. The 14th section of the charter of the Bank of Columbia granted by Maryland was repealed by the 8th section of the act of congress of the 2d of March, 1821 [3 Stat. 618], except as to debts contracted with the bank previous to the passing of that act.

3. Notes, given after the date of that act and discounted by the bank for the purpose of applying the proceeds of such discounting to the payment of debts due before the passing of that act, are not within the exception in the repealing act. By taking and discounting the new notes the bank relinquished the right to the summary remedy annexed to the old debt.

4. A writ of fieri facias returned executed, that is, levied upon property, is a discharge of the debt as to the debtor, unless, by an actual sale of the property seized, the value should appear to be insufficient to discharge the debt. Until that appears, the plaintiff cannot have a new execution.

5. A plaintiff has no right to countermand a fieri facias after it has been executed.

6. The clerk has no authority to issue a second or alias writ of fi. fa. upon the same order upon which the first was issued. There should have been a new order founded upon a new affidavit, &c.

7. The clause of the 14th section of the charter, which provides that "such executions shall not be liable to be stayed or delayed by any supersedeas, writ of error, appeal, or injunction from the chancellor," was only applicable to such writ of supersedeas, error, and injunction as the debtor himself might attempt to interpose, or as might be interposed by some person who has involuntarily subjected himself to the summary remedy by becoming a party to a note expressly made negotiable at the Bank of Columbia.

8. That clause could only regulate courts established under the authority of Maryland.

Bill for an injunction to stay the sale of lot No. 46, in Georgetown, under four writs of fi. fa. issued by order of the president of the Bank of Columbia, returnable to the October rules, 1822. The bill states that on the 1st of February, 1822, Bunnell and Robinson sold and conveyed to Clement Smith part of lot No. 46, in Old Georgetown, for $3,850. That Bunnell and Robinson being indebted to the Bank of Columbia on four notes at sixty days; namely, one for $250, dated March 22d, 1821; one for $200, dated March 8th, 1821; one for $200, dated February 22d, 1821; and one for $200, dated February 1. 1821; the president of the Bank of Columbia, on the 21st of January, 1822, ordered the clerk to issue four writs of fieri facias, under the 14th section of the charter, which writs were, on the 29th of March, 1822, levied on lot 112 of Beatty and Hawkins's addition to Georgetown; but the property was never sold, nor have the executions been quashed; but after the levy, the writs upon the second and fourth of the said notes, were countermanded. That the four writs were returned to April term, 1822, and thereafter other writs of fieri facias were sued out on all the said notes, returnable to October rules, 1822, and were levied on the said part of lot No. 46, to the abandonment of the first levies. and have not yet been returned. That the complainant never assented to the said abandonment of the first levies; and avers that the Bank of Columbia had no right to abandon them and levy on lot 46, until the property first levied on had been exhausted, or the levy quashed. That under the 8th section of the act of congress of March 2, 1821, the first and second of the said writs were issued illegally and irregularly. That, since the said levies, the notes and executions have been assigned by the Bank of Columbia to the Bank of the United States. That the complainant has, by way of compromise, offered to pay the amount due upon the third and fourth notes, if the Bank of the United States would assign them to him; which they refuse to do, except upon terms and conditions oppressive and unreasonable; and have caused that part of lot 46 to be advertised for sale under all the said four last writs of fieri facias by the marshal. That Bunnell and Robinson are wholly insolvent. That the

[1] [Reported by Hon. William Cranch, Chief Judge.]

complainant has sold the said lot with warranty, and is therefore liable to make good the title. The bill prays for general relief; that the plaintiff's title may be perpetually quieted, and that the defendants may answer, &c.; "and meanwhile, and until the further order of the court," "to command and enjoin" them and their agents "that they desist and forbear further proceeding to advertise and sell the said part of lot No. 46, under the said executions or any of them."

The joint answer of the defendants admits the dates of the notes; the issuing and the levying of the executions; and avers that they created a lien, from the time of their issue, upon lot 46 in the hands of Bunnell and Robinson, or of any purchaser from them with notice of the said writs; and that, being of record, they were, of themselves, notice to the complainant of the lien. That by the charter of the Bank of Columbia, the said writs were as valid and effectual, in law, to all intents and purposes, as if the same had issued on judgments, regularly obtained in the ordinary course of proceeding, and should not be liable to be stayed by any supersedeas, writ of error, appeal, or injunction from the chancellor; so that the injunction, by force of the act of assembly, ought to be dissolved. They do not admit the circumstances and times of issuing, levying, and returning the said executions, but require proof thereof, by the record of the marshal's returns or otherwise.

The order of the president of the Bank of Columbia to the clerk to issue the writs of fi. fa. is dated January 21, 1822. They were issued on the same day, and delivered to the marshal on the 23d day of January, 1822, at 3 o'clock, p. m. The fi. fa. No. 250, was returned to April term, 1822, "levied as per schedule." This execution issued on the note dated March 22d, 1821. The execution No. 252, was returned levied, as "per schedule in No. 250, and countermanded by cashier." This execution was issued on the note of March 8th, 1821. The execution No. 257, was returned levied as "per schedule in No. 250." This execution issued upon the note of 22d of February, 1821. No. 259 was issued on the note dated February 1, 1821, was returned "levied as per schedule in No. 250, and countermanded by cashier." The above writs of fieri facias were levied on lot No. 112, in Beatty and Hawkins's addition to Georgetown, on the 29th of March, 1822, and valued by the marshal at $4,000, as appears by the schedule referred to in the marshal's return, which is in these words: "Schedule of the lands and tenements of Eliab Bunnell, and William B. Robinson levied and taken in execution by Tench Ringgold, marshal of the District of Columbia, in virtue of writs of fieri facias Nos. 250, 252, 257, and 259, judicials, to April term, 1822, issued from the clerk's office of the said district for the county of Washington, to the marshal directed at the suits of the Bank of Columbia versus said Bunnell and Robinson. Schedule. Lot No. 112, in Beatty and Hawkins's addition to Georgetown, with all the improvements thereon valued at $4,000. Georgetown, March 29, 1822, Tench Ringgold, Marshal, District Columbia." On this schedule was indorsed the written consent of Bunnell and Robinson to the valuation; and dispensing with appraisers; dated the same day.

C. Cox, for plaintiff. The levy of the writs of fieri facias, countermanded, is satisfaction. There was no judgment to bind the lands. This fieri facias had no greater effect on lands than a fieri facias has upon goods and chattels. It has only the effect of an execution; not of a judgment; it only binds lands from its delivery to the marshal. When the first writ was countermanded the lien was abandoned; and the second writ of fi. fa. was the commencement of a new suit under the 14th section of the charter. Wood, Inst. Eng. Law, 608; Clerk v. Withers, 1 Salk. 323, 2 Ld. Raym. 1072; Mildmay v. Smith, 2 Saund. 344, note 3; Wilbraham v. Snow, Id. 47; Holbrook v. Ross, in this court at Alexandria, November, 1824 (not reported).

Mr. Lear, contra. The 14th section of the charter declares that the execution issued by order of the president of the bank shall be as valid and effectual as if issued upon a judgment. The order of the president of the bank to the clerk to issue the executions was made on the 21st of January, 1822, and they were issued on that day. The deed from Bunnell and Robinson to the complainant, C. Smith, was executed on the 1st of February, in the same year. In England the judgment does not bind the lands. The lien does not exist until the eligit is issued, when it relates back to the first day of the term in which the judgment was rendered; and such also was the case as to goods and chattels at common law, until the statute of frauds, 29 Car. II. c. 3, §§ 13–16, which limits the lien to the time of putting the execution into the hands of the sheriff. The execution, therefore, as to lands, binds from the time of its issuing, and the lien does not wait till the execution gets into the hands of the marshal. In lot No. 112, the defendant, C. Smith, had only an equitable title. The legal title had been conveyed to Richard Smith on the 28th of February, 1821. But an injunction will not lie to stay an execution issued by order of the president of the bank under the 14th section of the charter, which expressly prohibits it. The only remedy is by motion to quash the execution. It is true that two of the notes bear date since the repeal of the 14th section; but they were given in renewal of notes dated before the repeal, (March 2d, 1821.)

C. Cox, in reply. By taking new notes since the repealing act of the 2d of March, 1821, the bank has relinquished its right to the short process given by the 14th section of its original charter. The levy of the first

executions was not void by reason of the insufficiency of the property. The plaintiffs in the execution ought to have pursued it to a sale. The charter only prohibits the debtor from obtaining an injunction; not a third party. Mr. Smith, the complainant, was no party to the execution, and could not move to quash it.

Mr. Jones, on the same side, to show that the prohibition of injunction does not extend to third persons, nor even to the parties, cited the following cases, in this court: Mason v. Wilson (not reported); Bank of Columbia v. Okeley (not reported); Young v. Bank of Alexandria, 4 Cranch [8 U. S.] 396; Bank of Columbia v. Dawes, at May term, 1829 (not reported).[2]

Before CRANCH, Chief Judge, and THRUSTON and MORSELL, Circuit Judges.

CRANCH, Chief Judge, after stating the case, delivered the opinion of the court:

This cause is set for hearing, by consent, on bill, answers, general replication, and exhibits. It is not important, in the present case, to decide whether the lands of Bunnell and Robinson were bound by the order of the president of the Bank of Columbia, to the clerk, to issue the executions under the 14th section of the charter of that bank, or by the issuing of the executions; because they were, on the 23d of January, 1822, delivered to the marshal to be executed, and the deed under which Mr. Smith claims the lot No. 46, bears date nine days afterwards, namely, on the 1st of February, 1822; and there is no question that they bound the land and goods from the time of such delivery, if they bound them at all. But the 14th section of the original charter of the Bank of Columbia, which was the only act under which the clerk of the court had authority to issue executions upon the order of the president of the bank without a previous judgment of the court, was repealed by the 8th section of the act of congress of the 2d of March, 1821 (3 Stat. 618), which has this proviso: "That the said 14th section shall remain in full force and effect in relation to all debts contracted with the said bank previous to the passing of this act." Two of the notes, upon which two of these executions were issued, bear date after the passing of that act, namely, on the 8th and 22d of March, 1821. These two executions therefore, were absolutely void, because the clerk had no authority whatever to issue them; and the two subsequent executions, issued upon the same notes, were equally void, for the same reason. It has indeed been contended that these notes were given for a debt previously due to the bank, and therefore to be still considered as evidence of the old debt. But when these notes were discounted by the bank, the proceeds were

applied by the bank to the extinguishment of the old debt; and it is presumed that the bank will not admit that the makers of those notes had a right to plead the statute of limitations to these new notes. By taking the new notes, the bank has relinquished the right to the summary remedy annexed to the old debt. But there is no evidence, in this cause, that these notes were given for a debt due before the 2d of March, 1821. The question therefore cannot be made in this case.

The notes, upon which the other two executions were issued, bear date before the 2d of March, 1821, namely, on the 1st and 22d of February, 1821, and were therefore subject to the summary remedy. But the writs of fieri facias, issued upon these notes, were returned executed; that is, levied upon property valued by the marshal at $4,000. This was a complete discharge of the debt, as to Bunnell and Robinson, unless, by an actual sale of the property seized, the value should appear to be insufficient to discharge the debt. The plaintiff cannot have a new execution; and the marshal is liable to the plaintiff, to the amount of the debt, or to the value of the property as returned by him, if it be less than the debt, unless he has been prevented by the plaintiff from proceeding to complete the execution; or the execution be quashed by the court. The law to that effect is clearly laid down, in the case of Clerk v. Withers, 2 Ld. Raym. 1072, in error to the court of common pleas, and affirmed by the unanimous opinion of the court, after argument seriatim by all the judges. See also the following authorities, some of which were cited by the judges in their arguments in that case: Rook v. Wilmot, Cro. Eliz. 209; Atkinson v. Atkinson, Id. 391; Langdon v. Wallis, Lutw. 588; Mountney v. Andrews, Cro. Eliz. 237; Dyke v. Mercer, 2 Show. 394; Ayre v. Aden, Cro. Jac. 73; Thoroughgood's Case, Noy, 73; Cleve v. Veer, Cro. Car. 459; Wilbraham v. Snow, 2 Saund. 47, note 1, p. 47m; Id., 1 Lev. 282; Harrison v. Bowden, Sid. 29; Mildmay v. Smith. 2 Saund. 343; Slie v. Finch, 2 Roll. 57, Cro. Jac. 514; Coriton v. Thomas, Id. 566.

It is averred in the answer, that the lot 112 had, before the issuing of the first executions, been conveyed by Bunnell and Robinson to Richard Smith, in trust, to secure a debt of $2,000 to the Bank of the United States, and had, by him, been sold under that trust, before the defendants' resorting to the other property of Bunnell and Robinson, namely, part of lot No. 46, had been enjoined, &c. But the answer, in this respect, not being responsive to the bill, is not evidence of that fact; and, if it were, still the return of the marshal, being matter of record, would be conclusive. There must have been a sale, to ascertain the value of the lot 112, or the marshal must have amended his return; or the executions must have been quashed before new executions could be lawfully issued, if they could be issued at all,

---

[2] [See Bank of Columbia v. Baker, Case No. 862.]

without a new affidavit and order by the president of the bank. Upon one of those executions, namely, that which was issued upon the note of the 1st of February, 1821, the marshal returned "levied as per schedule in No. 250, and countermanded by cashier," meaning the plaintiff's cashier. But the plaintiff, in that case, had no authority to countermand the writ after it was executed, nor had the clerk any authority to issue a new writ upon such a return. Besides, in the case of Bank of Columbia v. Dawes [supra], this court, in May, 1829, decided that the clerk could not issue a second, or alias, writ of fi. fa. upon the same order upon which the first was issued, but must have a new order founded upon a new affidavit, &c. This objection, alone, is fatal to the new set of executions.

It has, however, been suggested by the answer, and insisted upon in argument, that by the 14th section of the original charter of the Bank of Columbia, "such executions shall not be liable to be stayed or delayed by any supersedeas, writ of error, appeal, or injunction from the chancellor." It is evident that this clause was only applicable to such supersedeas, writ of error, appeal, or injunction as the debtor himself might attempt to interpose, or as might be interposed by some person who had voluntarily subjected himself to the summary remedy, by becoming a party to a note expressly made negotiable at the Bank of Columbia. It never could be intended to apply to a stranger to the note, whose property might be seized under the execution. But if this is not an answer to the objection, yet the case of Young v. Bank of Alexandria, in the supreme court of the United States, 4 Cranch [8 U. S.] 397, seems decisive as to this point. The question there arose upon these words, in the charter of that bank: "And from the judgment given in such cases, there shall be no appeal, writ of error, or supersedeas;" and the cause came on upon a motion to quash the writ of error, because issued in violation of that prohibition. Mr. Chief Justice Marshall, in delivering the opinion of the court, said: "The act incorporating the bank, professes to regulate, and could regulate, only those courts which were established under the authority of Virginia. It could not affect the judicial proceedings of a court of the United States, or of any other state. There is a difference between those rights on which the validity of the transactions of the corporation depends, which must adhere to those transactions everywhere, and those peculiar remedies which may be bestowed on it. The first are of general obligation; the last, from their nature, can only be exercised in those courts which the power, making the grant, can regulate. The act of incorporation, then, conferred on the Bank of Alexandria a corporate character, but could give that corporate body no peculiar privileges in the courts of the United

States not belonging to it, as a corporation. Those privileges do not exist unless conferred by an act of congress."

For these reasons, we are of opinion that the writs of fieri facias, executed upon Mr. Smith's part of lot 46, in Old Georgetown, are void, and that the defendants ought to be perpetually enjoined from selling the same under the said writs, or either or any of them.